UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case No. _____

| | |
|---|---|
| HARRY ROTHENBERG, Individually and on Behalf of All Others Similarly Situated and Derivatively on Behalf of Nominal Defendant Imperial Holdings Inc., | COMPLAINT – CLASS ACTION <br><br> DEMAND FOR JURY TRIAL |

                           Plaintiff,

     vs.

PHILLIP F. GOLDSTEIN, ANDREW DAKOS, ANTONY MITCHELL, JAMES M. CHADWICK, RICHARD DAYAN, MICHAEL A. CROW, and GERALD HELLERMAN,

                          Defendants,

     vs.

IMPERIAL HOLDINGS, INC.,

                        Nominal Defendant.

_____/

**VERIFIED SHAREHOLDER CLASS ACTION AND
DERIVATIVE COMPLAINT**

Case No. _____

Plaintiff Harry Rothenberg ("Plaintiff"), individually and on behalf of all others similarly situated and derivatively on behalf of Nominal Defendant Imperial Holdings, Inc. ("Imperial Holdings" or the "Company"), submits this Verified Shareholder Class Action and Derivative Complaint against Imperial Holdings' Board of Directors (the "Board" or the "Defendants"). Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery, and based upon information and belief, alleges as follows:

## SUMMARY OF THE ACTION

1. This is a direct shareholder class action brought by Plaintiff against Defendants for breach of fiduciary duties owed to Imperial Holdings' public shareholders, for declaratory and injunctive relief, and for violations of the Securities Exchange Act of 1934 (the "1934 Act"), and a shareholder derivative action brought by Plaintiff on behalf and for the benefit of Imperial Holdings for waste of corporate assets, breach of fiduciary duty, abuse of control, and gross mismanagement.

2. Nominal Defendant Imperial Holdings is currently under investigation by the United States Securities and Exchange Commission (the "SEC") relating to possible violations of federal securities laws in connection with its legacy premium finance business and corresponding financial reporting.

3. Imperial Holdings is also currently under investigation by the Internal Revenue Service Criminal Investigation Division (the "IRS") relating to its structured settlement business and in particular, upon information and belief, the Company's nefarious practices of filing knowingly falsified and misleading structured settlement petitions and related documents in state courts across the country.

- 1 -

Case No. _____

4.      In September 2011, in connection with an investigation of the Company by the United States Attorney's Office for the District of New Hampshire, the Company's headquarters were raided by the Federal Bureau of Investigation (the "FBI") and other federal agents.  The raid and investigation resulted in a settlement pursuant to which the Company: (a) paid an $8 million penalty to the United States Government; (b) incurred legal costs of more than $10.6 million; (c) agreed to discontinue its insurance premium loan financing activities, which historically accounted for the majority of the Company's income; and (d) agreed that the Company lacked appropriate internal controls to prevent potential fraudulent practices in its premium finance business.  The SEC and the IRS were not parties to this settlement.

5.      Thereafter, Imperial Holding's directors and officers were named as defendants in securities class and derivative actions.  These actions were ultimately resolved by the payment of $12 million in cash and approximately $1.6 million in warrants to owners of Imperial Holdings shares and the adoption by Imperial Holdings of sweeping corporate governance, compliance, and internal control reform measures.  The release of claims in the settlement agreement relates solely to claims "arising from or related to the purchase or acquisition of securities of Imperial [Holdings] either (i) pursuant and/or traceable to the Registration Statement issued in connection with [the Company's] February 7, 2011 initial public offering or (ii) on the open market on or prior to February 21, 2012."[1]

6.      Notwithstanding this background and the ongoing investigations by the SEC and the IRS, and indeed, seemingly because of these investigations of potential illegal activity by the

---

[1]     *See* Stipulation and Agreement of Settlement, *Fuller v. Imperial Holdings, Inc.*, Case No. 11-81184-CIV-MARRA (S.D. Fla. Aug. 2, 2013), ECF No. 88-1 at 16-17.

- 2 -

Case No. _____

Company and its executives, on November 3, 2014, Defendants – Imperial Holdings' directors – adopted a bylaw (the "Bylaw").  The sole purpose of the Bylaw is to insulate Defendants from shareholder redress for violations of state and federal statutory law and breaches of fiduciary duties, both in the past and in the future.  On information and belief, only companies connected to Defendant and Imperial Holdings Chairman Phillip F. Goldstein ("Goldstein") have attempted similar measures.

7.     The Bylaw places all-but-insurmountable hurdles before the courthouse doors and is designed to, and effectively does, eliminate public shareholders' statutory and common law rights to commence and prosecute shareholder class and derivative litigation against them, no matter how egregious the wrongs committed by Defendants.

8.     The Bylaw unilaterally overrides federal and state law and judicial precedent which expressly mandate the requirements that public shareholders must meet to commence and prosecute class or derivative actions.  The Bylaw requires current and former shareholders who wish to file a class or derivative action against or on behalf of Imperial Holdings, its directors, or its officers to first obtain *written consent from other shareholders beneficially owning at least 3%, or over 642,000, Company shares*.

9.     The Bylaw was adopted in breach of Defendants' fiduciary duties because their sole intent was to reduce their risk of being held accountable to the Company or its shareholders for any violations of law, including criminal law, breaches of fiduciary duties or other misconduct, and to protect their tenure by entrenching their control of the Company.

10.     The Bylaw imposes a pre-filing requirement so onerous that it effectively guarantees that, notwithstanding the provisions of federal and state law, no class or derivative actions can be

- 3 -

Case No. _____

filed against Defendants or the Company, regardless of the extent of their misconduct.  With the powerful deterrent of the derivative and securities class action mechanisms gone, shareholder and judicial oversight will be all but eliminated.  Defendants will have a freer hand to engage in wrongful and unlawful conduct in breach of their fiduciary duties without exposing themselves to substantial liability, knowing they have insulated themselves from the laws enacted by Congress and the State Legislature to protect the Company and investors from such misconduct.

11.     To be sure, in the Company's Proxy Statement filed on Schedule 14A with the SEC on April 8, 2015 (the "Proxy"),[2] and in connection with Defendants' attempts to obtain a shareholder "advisory vote" on the Bylaw, Defendants admit: "There is a possibility that the requirement to obtain 3% of the applicable outstanding shares may prevent a meritorious lawsuit by a small shareholder on behalf of the Company or a class of shareholders from being prosecuted."  Proxy at 34.

12.     The Bylaw also falls outside the scope of authority granted by Florida Statutes Section 607.0206 because it does not relate to the business or affairs of the corporation and is irreconcilable with federal and Florida law.  Although Imperial Holdings, through Defendants, has stated in the Proxy that Company shareholders will have an "advisory vote" on this Bylaw, and that Defendants "intend[] to repeal the [Bylaw] if the shareholders do not approve the proposal," the Bylaw is nevertheless effective as of November 3, 2014.

13.     By adopting a Bylaw that is unrelated to the business or affairs of the Company and is irreconcilable with federal and Florida law, Defendants have acted disloyally and in bad faith and

---

[2]     A true and correct copy of the Proxy is attached hereto and incorporated herein by reference as **Exhibit A.**

Case No. _____

placed their own interests in avoiding liability to shareholders over the interests of both the Company and the public shareholders to whom they owe fiduciary duties.  Moreover, Defendants adopted the Bylaw without being fully informed, by independent legal advisors, of the circumstances surrounding the validity and legality of the Bylaw, in breach of their fiduciary duties of due care.

14.     Plaintiff seeks a declaratory judgment in his favor, declaring that the Bylaw is an ultra vires act that was adopted in breach of Defendants' fiduciary duties, is irreconcilable with federal and Florida law and public policy, and is invalid and unenforceable.  Plaintiff also seeks a preliminary and permanent injunction barring Defendants from enforcing the Bylaw.  For this purpose, Plaintiff has no adequate remedy at law.

15.     Moreover, Defendants have caused Imperial Holdings to file a false and misleading Proxy with the SEC.  The Proxy fails to disclose material information to the Company's shareholders in connection with their "advisory vote" on the Bylaw.  As detailed below, Defendants' Proxy violates §14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder by: (a) creating a materially misleading impression that shareholder litigation serves no legitimate purpose; (b) failing to explain the meaning of the following sentence: "nor does it apply to claims….where a private right of action at a lower threshold….is expressly authorized by statute;" (c) creating a materially misleading comparison between the Bylaw and inapt statutes and laws; (d) failing to disclose material information concerning the IRS and SEC investigations; (e) failing to disclose the basis for the Board's stated belief that the Bylaw will not unduly deter the prosecution of meritorious litigation; (f) failing to disclose the basis for the Board's stated belief that current law (including Rule 11, the PSLRA, and the business judgment rule) is not adequate to deter unmeritorious litigation; (g) failing to disclose the Board's understanding – in view of its own self-interest – of

- 5 -

Case No. _____

what constitutes meritorious or unmeritorious litigation; (h) failing to disclose that of the purported

nine shareholders who individually own at least 3% of the Company's outstanding shares, many are

insiders; (i) failing to disclose what basis the Board has for choosing a 3% threshold of ownership, as

opposed to any other percentage, particularly in view of considerations 4 and 1 on page 34 of the

Proxy; (j) failing to disclose the basis for the representation in consideration 6 on page 34 of the

Proxy that the Bylaw will reduce the cost of D&O insurance; (k) failing to disclose the existence of

the *Lafontant* litigation in the United States District Court for the Southern District of New York,

which could be grounds for future representative litigation against the Company and its directors

and/or officers; (l) failing to disclose the fact that individual shareholder pursuit of "meritorious"

litigation is disincentivized by the cost and complexity of such litigation, which is only tempered by

the ability to pursue class and derivative litigation; and (m) being contradictory with respect to

whether the vote on the Bylaw is "advisory" or not.[3]

16.    Finally, Plaintiff sues Defendants derivatively on behalf of the Company against

Defendants based on their conduct in aiding, abetting, assisting, fostering, and directly participating

in the Company's nefarious practices of filing knowingly falsified and misleading structured

settlement petitions in state courts across the country, which, upon information and belief, forms at

least part of the basis of the ongoing IRS investigation and was not the subject of prior class or

derivative litigation.

---

[3]    Plaintiff put Defendants on notice of these false and misleading statements in the Proxy by an
email to Defendants' counsel on April 9, 2015, which attached a Statement in Opposition to the
Bylaw, which Plaintiff requested be included in the Proxy.  On April 10, 2015, Defendants caused
the Company to file a Schedule 14A (Definitive Additional Materials) with the SEC attaching
Plaintiffs' Statement in Opposition to the Representative Claims Bylaw, a true and correct copy of
which is attached hereto and incorporated herein by reference as **Exhibit B**.

Case No. _____

17.     Defendants' knowing and wilful scheme to obtain non-qualified court orders for structured settlement factoring transactions has had the effect of leaving the Company potentially liable for unpaid federal excise taxes pursuant to Internal Revenue Code §5891(a), which are unaccounted for in Imperial Holdings' financial statements and likely amount to tens of millions of dollars, as well as substantial penalties, fines, legal fees, and other damages from the IRS investigation, SEC investigation, and likely Department of Justice and private securities fraud actions.

18.     Defendants' conduct constitutes a clear abuse of control, gross mismanagement, breach of fiduciary duties, and a waste of corporate assets for which they should be held liable to Plaintiff derivatively on behalf of the Company.

## JURISDICTION AND VENUE

19.     This Court has jurisdiction over all claims asserted herein pursuant to §27 of the 1934 Act for violations of §§14(a) and 20(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder.

20.     Venue is proper in this District because Imperial Holdings has its principle place of business in this District.  Plaintiff's claims arose in this District, where most of the actionable conduct took place, where most of the documents are electronically stored and where the evidence exists, and where virtually all the witnesses are located and available to testify at the jury trial permitted on these claims in this Court.  Moreover, each of Defendants, as Company officers and directors, has extensive contacts with this District.

- 7 -

Case No. _____

## PARTIES

21.     Plaintiff is, and at all relevant times was, a shareholder of Imperial Holdings. Plaintiff is a citizen and resident of the state of New Jersey.

22.     Nominal Defendant Imperial Holdings, Inc. is a Florida corporation with its principal place of business located at 5355 Town Center Road, Suite 701, Boca Raton, Florida 33486, and is a citizen of Florida.  Imperial Holdings owns and manages a portfolio of approximately 600 life insurance policies, also referred to as life settlements.  As of December 31, 2014, these life settlements had a fair value of approximately $388.9 million and an aggregate death benefit of approximately $2.9 billion.  The Company primarily earns income on these policies from changes in their fair value and through death benefits when a person covered by one of the policies dies.  The Company has historically operated in two reportable business segments: life finance and structured settlements.  On October 25, 2013, the Company sold its structured settlements business.  Imperial Holdings common stock is listed and publicly traded on the New York Stock Exchange under the symbol "IFT."  As of December 31, 2014, the Company had 21,402,990 shares of common stock outstanding.  There are an additional 1,464,941 shares underlying the Company's convertible notes.

23.     Defendant Phillip F. Goldstein ("Goldstein") is, and at all material times was, Chairman of the Board of the Company.  Goldstein is also co-founder of Bulldog Investors, an activist investor group that beneficially owns approximately 11.9% of Imperial Holdings common stock.

24.     Defendant Andrew Dakos ("Dakos") is, and at all material times was, a Director of Imperial Holdings.  Dakos is also affiliated with Bulldog Investors.

- 8 -

Case No. _____

25.     Defendant Antony Mitchell ("Mitchell") is, and at all material times was, Chief Executive Officer and a Director of Imperial Holdings. Mitchell beneficially owns approximately 8.7% of the Company's common stock.

26.     Defendant James M. Chadwick ("Chadwick") is, and at all material times was, a Director of Imperial Holdings. Chadwick beneficially owns approximately 5,181 shares of the Company's common stock.

27.     Defendant Richard Dayan ("Dayan") is, and at all material times was, a Director of Imperial Holdings. Dayan beneficially owns 30,381 shares of the Company's common stock.

28.     Defendant Michael A. Crow ("Crow") is, and at all material times was, a Director of Imperial Holdings. Crow beneficially owns 6,002 shares of the Company's common stock.

29.     Defendant Gerald Hellerman ("Hellerman") is, and at all material times was, a Director of Imperial Holdings. Hellerman beneficially owns 32,809 shares of the Company's common stock. He is also affiliated with Bulldog Investors.

30.     Defendants identified in paragraphs 23 through 29 are members of the Board who adopted the invalid Bylaw in order to reduce their risk of being held liable to Imperial Holdings or its shareholders for violations of law and breaches of fiduciary duties, caused Imperial Holdings to file the false and misleading Proxy with the SEC, and aided, abetted, assisted, fostered, and directly participated in the nefarious scheme to file knowingly falsified and misleading structured settlement petitions in state courts across the country, which, upon information and belief, forms at least part of the purpose behind the ongoing IRS investigation, and which will result in the Company paying tens of millions of dollars in excise taxes to the IRS, on top of the fines and other penalties forthcoming.

- 9 -

Case No. _____

## FACTUAL ALLEGATIONS

### Defendants Adopted an Illegal Bylaw that Shields them from Liability

31.     On November 3, 2014, Imperial Holdings announced that Defendants, without shareholder approval, adopted the unprecedented Bylaw.  The Bylaw, which went into effect immediately, states:

> Section 3.16 Representative Claims. Except where a private right of action at a lower threshold than that required by this bylaw is expressly authorized by applicable statute, a current or prior shareholder or group of shareholders (collectively, a "Claiming Shareholder") may not initiate a claim in a court of law on behalf of (1) the corporation and/or (2) any class of current and/or prior shareholders against the corporation and/or against any director and/or officer of the corporation in his or her official capacity, unless the Claiming Shareholder, no later than the date the claim is asserted, delivers to the Secretary written consents by beneficial shareholders owning at least 3% of the outstanding shares of the corporation as of (i) the date the claim was discovered (or should have been discovered) by the Claiming Shareholder or (ii), if on behalf of a class consisting only of prior shareholders, the last date on which a shareholder must have held shares to be included in the class.

32.     Contrary to federal and Florida law, the Bylaw prohibits both current and former shareholders from initiating a derivative action on behalf of the Company or a shareholder class action against the Company, its officers, or its directors without first obtaining written consent from other shareholders owning at least 3% of Imperial Holdings common stock, which amounts to more than 642,000 shares (which would increase upon conversion of the Company's convertible notes).

33.     Indeed, because Company insiders and entities associated with them, including Defendants, control over 21% of the Company's shares, public shareholders would need to obtain written consents from **_well over 3%_** of the non-insider shares in order to seek redress against the insiders.  By contrast, Imperial Holdings' Bylaws provide that a stockholder who wishes to nominate a director must hold only 1% of the Company's outstanding stock.

- 10 -

Case No. _____

34.     This draconian provision appears to be the first of its kind in the nation, but its purpose is clear: to reduce the risk of Defendants being held liable to the Company or its shareholders for any violations of federal and state law or other misconduct, both in the past and in the future, no matter how egregious.

35.     Thus, the Bylaw creates an onerous, unreasonable, and unlawful obstacle designed solely to prevent shareholders from exercising their statutory right to bring valid derivative claims or class action litigation.  Similarly, it denies the Court the responsibility and power of determining whether the claims sought to be litigated are meritorious or frivolous.

36.     The insurmountable nature of the Bylaw's written consent requirement is magnified by the fact that public shareholders ***do not have a list of a company's shareholders*** from which to obtain contact information for the shareholders to obtain their consent, and only a fraction of a company's shareholders – generally institutional investors and company insiders – publicly disclose their share holdings.

37.     Indeed, Institutional Shareholder Services, Inc. ("ISS")[4] has come out squarely against the Bylaw at issue here, issuing a strong recommendation AGAINST shareholder approval of an identical bylaw adopted by the board of directors of another company controlled by defendant Goldstein, The Mexico Equity & Income Fund, Inc., stating:

> A vote AGAINST this proposal is warranted, however, because the parameters of the new by-law may not necessarily distinguish between frivolous and meritorious

---

[4]   ISS "is the world's leading provider of corporate governance solutions for asset owners, hedge funds, and asset service providers.  ISS' solutions include objective governance research and recommendations, end-to-end proxy voting and distribution solutions, turnkey securities class-action claims management, and reliable global governance data and modeling tools.  Institutional clients turn to ISS to apply their corporate governance views, identify governance risk, and manage their complete proxy voting needs on a global basis."  http://www.issgovernance.com/about/about-iss/.

- 11 -

Case No. _____

lawsuits; the necessity for such a by-law has not been demonstrated by a trend of frivolous lawsuits at the fund; and the by-law could serve to further entrench and protect directors from all forms of shareholder action.

\* \* \* \*

The types of lawsuits this by-law could prevent from occurring would not be limited to any specific type of lawsuit. In fact, the parameters of the new by-law do not distinguish between frivolous or meritorious lawsuits. The by-law would effectively prevent small shareholders from suing the fund that cannot obtain the support of at least three percent of the fund's outstanding shares. The fund's float is currently about 6.7 million shares. Under this by-law, an investor would have to submit written consent from holders of about 203,000 shares.[5]

### Defendants Adopted the Bylaw in Bad Faith and in Breach of Their Fiduciary Duties

38.     It is axiomatic that Defendants, as directors of a public corporation, owe the Company's shareholders fiduciary duties, including the duties of good faith, loyalty, and due care. The power of corporate directors to amend bylaws must be exercised in accordance with their fiduciary duties to the shareholders.

39.     Where directors have self-interest in a bylaw amendment or did not adequately inform themselves before adopting the amendment, the burden of proving the inherent or entire fairness of their adoption of the Bylaw is placed upon Defendants as a matter of law.

40.     Here, Defendants have a material self-interest in the Bylaw and adopted it in bad faith and in breach of their fiduciary duties.  They acted with the sole purpose of reducing their risk of being held liable to the Company and its shareholders for violations of federal and Florida law and other misconduct.  In sum, Defendants have taken the law into their own hands and given themselves a license to commit securities fraud and ignore their clear fiduciary obligations without any

---

[5]     *See* ISS proxy analysis and vote recommendation at 1, 4 (Dec. 5, 2013), a true and correct copy of which is attached hereto and incorporated herein by reference as **Exhibit C**.

Case No. _____

accountability to the Company's shareholders.  Defendants have, thus, unlawfully placed their own

interests above the interests of the Company and its shareholders to whom they owe fiduciary duties.

41.     Defendants also adopted the Bylaw without being fully informed of the circumstances

and legality surrounding the Bylaw by independent legal advisors, in breach of their fiduciary duties

of due care.

### The Bylaw Is Invalid Under Florida Statutes §607.0206

42.     Florida Statutes Section 607.0206(2) provides that "[t]he bylaws of a corporation may

contain any provision ***for managing the business and regulating the affairs of the corporation that

is not inconsistent with law*** or the articles of incorporation." (Emphasis added.)

43.     The Bylaw is invalid under Section 607.0206(2) because it does not pertain to the

"managing [of] business" or "the affairs of the corporation."  Rather, it is an ultra vires attempt to

override statutory law and impermissibly regulate the legal process by which current and former

shareholders may obtain redress for harms caused by Defendants and other members of Company

management.

44.     To be sure, bylaws are not, and have never meant in the history of the corporate form,

to concern the judicial process and access to courts, as the Bylaw here does by effectively

eliminating the right of small shareholders to bring derivative and securities class action lawsuits.

45.     Indeed, Florida law is clear that any attempts to "defin[e], limit[], and regulat[e] the

powers of the corporation and its board of directors ***and shareholders***" may only be included,

provided they are "not inconsistent with law," in a company's articles of incorporation, not in

bylaws, which are limited under Florida law to "[m]anaging the business and regulating the affairs of

the corporation."  *See* Fla. Stat. §607.0202 (emphasis added).

- 13 -

Case No. _____

46.     Defendants' disloyal and bad faith effort to impose barriers to legal redress for shareholders they have harmed plainly does not relate to  the "managing [of] business" or "the affairs of the corporation" and, thus, falls outside the scope of authority granted by Section 607.0206(2).

47.     The Bylaw is also invalid under Section 607.0202 because it is plainly inconsistent with both federal and Florida law.

48.     The Bylaw purports to require shareholder consent to initiate derivative suits and shareholder class actions.  But neither consent from absent class members nor a minimum percentage of shareholdings are required elements of a class action under Florida Rule of Civil Procedure 1.220 or Federal Rule of Civil Procedure 23.  And neither shareholder consent nor a minimum percentage of shareholdings are requirements of a derivative claim under Florida Statutes Section 607.07401 or Federal Rule of Civil Procedure 23.1.

49.     Indeed, the Bylaw effectively interferes with the Board's own fiduciary obligations to consider any written demand to take action by a shareholder, as any non-3% shareholder who makes a demand on Defendants would have no threat of derivative litigation to hold over the Board's head if it doesn't act because, under the Bylaw, the shareholder would not be legally allowed to sue.

50.     Similarly, the Bylaw runs afoul of the federal securities laws, which contain no minimum-percentage-to-sue requirements.  *See*, *e.g.*, 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5.

Case No. _____

51.     The Bylaw is also preempted by and irreconcilable with the federal securities laws, the broad purpose of which is deterrence.[6]

52.     The Bylaw is inconsistent with these rules and statutes and is against public policy because it imposes an inequitable barrier – written shareholder consent or a minimum percentage of shareholdings – designed solely to insulate Defendants from their own misdeeds by preventing injured shareholders from exercising the rights afforded them under the law.

53.     The Bylaw imposes requirements and conditions upon shareholders that the United States Supreme Court, the United States Congress, the State Legislature, and regulatory authorities chose not to impose.  The Board has literally taken the law into its own hands.  Class actions are filed and litigated as individual actions until certified by a court.  And the court can dismiss an action if it finds that it does not state a claim.  Indeed, it can impose sanctions upon parties and counsel under Rule 11, 28 U.S.C. §1927, or the PSLRA.  The Bylaw requirement that injured shareholders must also obtain shareholder consent is inconsistent with claims under Florida law that do not require pre-filing shareholder approval, such as claims for breach of fiduciary duties and violations of the Florida Business Corporation Act, including Florida Statutes Section 607.0304(2)(a), which expressly provides that "[a] corporation's power to act may be challenged . . . [i]n a proceeding by *a shareholder* against the corporation to enjoin the act[.]"  (Emphasis added.)

54.     The Bylaw is also inconsistent with the federal securities laws, including the Securities Act of 1933 and the 1934 Act, which permit holders of even one share to bring claims

---

[6]     *See SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 186 (1963) ("[a] fundamental purpose, common to [the Securities Acts], was to substitute a philosophy of full disclosure for the philosophy of *caveat emptor* and thus to achieve a high standard of business ethics in the securities industry.").

- 15 -

Case No. _____

without shareholder consent.  This is true even if the Bylaw is ratified by shareholder "advisory vote."

55.     In any event, as discussed below, in violation of the 1934 Act and the rules promulgated thereunder, Defendants have filed a false and misleading Proxy with the SEC, making any "advisory vote" on the Bylaw null and void, as Defendants have failed to provide shareholders with material information necessary for them to make an informed decision on whether to ratify the Bylaw.

56.     Finally, the Bylaw is inconsistent with Defendants' fiduciary duties because it was adopted in bad faith and places Defendants' interests in avoiding legal liability over shareholders' interests in obtaining redress for harms caused by directors or officers of the Company.

**The Proxy Is False and Materially Misleading in Violation of the 1934 Act**

57.     The Proxy is false and misleading for several material reasons, and does not provide all essential information concerning the Bylaw to Imperial Holdings shareholders.

58.     ***First***, the Proxy does not provide ***any*** details to shareholders regarding the pending investigations by the IRS and SEC, the materiality of which is self-evident because Defendants state in the Proxy that the Company "is currently being investigated by the Internal Revenue Service, which may provide the basis for a lawsuit on behalf of the Company or on behalf of a class of shareholders."  If, as Defendants admit, the IRS investigation "may provide the basis for a lawsuit," the very filing of which would be made virtually impossible by the Bylaw, Defendants are obligated to disclose the details surrounding the IRS and SEC investigations, including the stated purpose of each investigation, the individuals involved in each investigation, and status of each investigation, and whether any financial or other penalties are expected as a result of each investigation.  Indeed, to

- 16 -

Case No. _____

the extent, as Plaintiff believes, the IRS investigation concerns the nefarious scheme Defendants have engaged in with respect to state court filings in structured settlement factoring transactions, Defendants must make full disclosure to Imperial Holdings shareholders prior to any vote on the Bylaw.

59.     **Second**, the Proxy fails to disclose the existence of the case styled *Lafontant v. Wash. Square Fin. LLC, et al.*, Case No. 14-cv-9895 (S.D.N.Y.), where Imperial Holdings is alleged to have engaged in the same structured settlement transaction scheme identified herein, and could be grounds for future representative litigation against the Company and its directors and officers.

60.     **Third**, the Proxy does not disclose the standards that the Board will use to determine the discovery date of a claim (or date a claim should have been discovered) and that the Board may reject any consents submitted by shareholders for having allegedly selected the wrong date.

61.     **Fourth**, the Proxy does not disclose that the identity of the shareholders (whether record owners or beneficial owners) on the relevant dates is not publicly available and, therefore, the identity of other small shareholders will be unavailable in connection with any effort to obtain the required consents.

62.     **Fifth**, the Proxy discloses the following misleading view of Defendants: "much shareholder litigation against corporations is not intended to obtain meaningful redress for wrongful acts committed by companies, their officers or directors.  Rather, it is driven by law firms that recruit a shareholder to serve as a representative plaintiff for the purpose of generating legal fees. Typically, these law firms obtain a settlement that includes a company agreeing to pay their fees because that is less costly (for the corporation) than litigating."  Defendants' statement is false and misleading, as it paints a remarkably inaccurate picture of shareholder litigation.  To be sure, since 2000, shareholder

- 17 -

Case No. _____

litigation in the United States has recovered **over $77.2 billion** for shareholders harmed by corporate fraud and other malfeasance – **including due to Defendants' own fraud, which resulted in shareholders receiving over $13 million in cash and warrants!**[7]

63.     **Sixth**, the Bylaw itself states, "[e]xcept where a private right of action at a lower threshold than that required by this bylaw is expressly authorized by applicable statute," and the Proxy also states that the Bylaw does **not** "apply to claims…where a private right of action at a lower threshold….is expressly authorized by statute." These vague and uncertain sentences are not defined in the Proxy and leave a shareholder wondering as to the meaning. To be sure, as Plaintiff alleges here, the federal securities laws and the Florida and federal derivative statutes and rules only require the ownership of one share of a Company's stock to have standing to initiate a lawsuit. In those instances, does the Bylaw apply? The ambiguity thus compounds the legal problems with the Bylaw in the first instance.

64.     **Seventh**, the Proxy misleadingly refers to laws that purport to require certain share percentage holdings, purportedly justifying Defendants' actions here. This is false and misleading not only because each of the laws cited are inapt, but because the Proxy does not disclose that there are no such requirements to bring federal or Florida derivative claims, or claims under the Securities Act of 1933 or the 1934 Act.

65.     **Eighth**, the Proxy fails to disclose the basis for the Board's stated belief that the Bylaw will not unduly deter the prosecution of meritorious litigation when, in fact, it most certainly will due to the fact that nearly all shareholder litigation is initiated and prosecuted by shareholders

---

[7]     *See* Renzo Camolli & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2014 Full-Year Review*, NERA ECONOMIC CONSULTING, Jan. 20, 2015, http://www.nera.com/publications/archive/2015/recent-trends-in-securities-class-action-litigation--2014-full-y.html.

Case No. _____

holding less than 3% of a company's outstanding common stock, and the ability to reach out to and obtain consent from other shareholders is exceptionally demanding, if not impossible.

66.     **Ninth**, the Proxy fails to disclose the basis for the Board's stated belief that current law (including the business judgment rule, the lead plaintiff provisions of the PSLRA, and the ability of the courts to impose sanctions) is not adequate to deter unmeritorious litigation.

67.     **Tenth**, the Proxy fails to disclose the Board's understanding – in view of its own self-interest – of what constitutes meritorious or unmeritorious litigation.

68.     **Eleventh**, the Proxy fails to disclose that of the purported nine shareholders who individually own at least 3% of the Company's outstanding shares, many are insiders who have a conflict of interest with respect to the adoption of the Bylaw

69.     **Twelfth**, the Proxy fails to disclose what basis the Board had for choosing a 3% threshold of ownership, as opposed to any other percentage, particularly in view of considerations 4 and 1 on page 34 of the Proxy.

70.     **Thirteenth**, the Proxy fails to disclose the basis for the representation in consideration 6 on page 34 of the Proxy that the Bylaw will reduce the cost of directors and officers insurance and fails to disclose that the cost of insurance can be reduced by directors agreeing to be personally responsible for an underlying amount of any liability.

71.     **Fourteenth**, the Proxy fails to disclose the fact that individual shareholder pursuit of "meritorious" litigation is disincentivized by the cost and complexity of such litigation, which is only tempered by the ability to pursue class and derivative litigation.

Case No. _____

72.    **Fifteenth**, the Proxy does not advise how the Bylaw concerns "managing the business and regulating the affairs of the corporation," pursuant to Fla. Stat. §607.0206, and is not instead a limitation or regulation of the powers of shareholders, pursuant to Fla. Stat. §607.0202.

73.    **Sixteenth**, although the substantive sections of the Proxy state that the shareholder vote on the Bylaw is merely an "advisory vote," the "Proxy Voting Instructions" card attached at the end of the Proxy does not.  This is material misleading not only because it is contradictory, but the Proxy and Proxy Card do not present information in a clear and impartial manner. 17 C.F.R. §240.14a-4(a).

74.    Without disclosure of this material information above, Plaintiff and the class of Imperial Holdings public shareholders are unable to make intelligent, rational and informed decisions on the Bylaw, and Plaintiff and the Class have no adequate remedy at law.

**Defendants Have Engaged in a Nefarious Scheme With Respect the Company's
Structured Settlement Business, Leaving the Company on the
Hook for Substantial Monetary Damages**

75.    A structured settlement factoring transaction occurs when a person's right to receive future structured settlement payments is sold to another in exchange for short term payments at a discounted rate.

76.    For example, when a person receives a settlement from a personal injury lawsuit that is to be paid out over time, the recipient of the settlement may decide at some point, for whatever reason (e.g., medical bills, a new car, etc.), that they need more money in the short term than the periodic payment provides over time.  To meet this need, the structured settlement recipient can sell all or part of their future periodic settlement payments for a present (discounted) lump sum.

Case No. _____

77.     In 2001, the Internal Revenue Code was amended through the addition of §5891, creating a regulatory paradigm for the factoring industry by providing for a putative 40% excise tax for structured settlement factoring transactions that do not meet certain mandatory requirements.

78.     In order to avoid this excise tax penalty, §5891 requires that all structured settlement factoring transactions be approved by a "qualified [court] order" entered by a state court, in accordance with a qualified state statute.

79.     On the other hand, the failure to obtain a "qualified order" by a state court in accordance with a qualified state statute will leave the purchaser of the structured settlement liable for the 40% excise tax which must be paid to the IRS.

80.     One of the requirements for a "qualified order" is that it comes from a state court where "the payee of the structured settlement is domiciled."

81.     However, some state courts are more rigorous than others when it comes to approving structured settlement factoring transactions.  These "more rigorous" courts: (a) take a very long time to review and approve a transaction; (b) will not "rubber-stamp" approvals of a structured settlement transaction; and/or (c) will not approve a transaction with discount rates too high (e.g., higher than 15%).

82.     On the other hand, some state courts, like Sumter County, Florida, are favored by structured settlement businesses like Imperial Holdings because Imperial Holdings views them as willing to "rubber-stamp" any structured settlement factoring transaction put in front of them.

83.     Unwilling to wait or be challenged by certain state courts on its petitions to approve structured settlement factoring transactions in those jurisdictions, Defendants concocted a short-cut scheme that cheated structured settlement annuitants, courts, and the IRS all at the same time.

- 21 -

Case No. _____

84.    As alleged in the *Lafontant* lawsuit, and further confirmed through public records, the scheme implemented by Defendants worked like this:

(a)    An Imperial Holdings employee would orchestrate a "relocation" of the annuitant by, among other things: (i) sending money to the annuitant in the form of stored value cards; (ii) sending the annuitant a plane ticket so he or she could travel to another state; (iii) meeting the annuitant at the airport; (iv) arranging for the annuitant's hotel; (v) arranging for the annuitant to obtain a lease of property in the other state; (vi) arranging for the annuitant to open a bank account and providing the money to fund that account; and (vii) arranging for the annuitant to get a new state identification other than the state of his/her domicile, and going with the annuitant to the appropriate state office and acting as his or representative with state officials.

(b)    Imperial Holdings would then prepare and file a knowingly falsified and misleading petition with a "friendly" state court in a state other than the one of the annuitant's domicile, which would then get rubber-stamp approval (sometimes Imperial Holdings would actually obtain a new state identification **after** petitioning for court approval of the transaction, but before the hearing).

85.    The scheme, however, had the distinct result of making the state court's order approving the structured settlement factoring transactions an **un**qualified order under Internal Revenue Code §5891, requiring the payment by Imperial Holdings of a 40% excise tax to the IRS.

86.    Imperial Holdings, however, has not paid the IRS any excise taxes on the Company's structured settlement factoring transactions with unqualified orders.

- 22 -

Case No. _____

87.     Upon information and belief, Imperial Holdings owes the IRS tens of millions of dollars in unpaid excise taxes resulting from the fraudulently obtained unqualified orders approving structured settlement factoring transactions.

88.     This scheme was not the work of one or two rogue Imperial Holdings employees, but rather a concerted effort by Defendants to cheat the IRS, courts around the country, and annuitants.

89.     Indeed, upon further information and belief, Defendants hired a "consultant" who used to work for Peachtree Settlement Funding, a predecessor to Imperial Holdings, to "clean" the files at Imperial Holdings and wash away any inculpating documents and data.

90.     Defendants' conduct alleged herein has caused and will cause substantial financial and reputational harm to the Company, including the payment of millions of dollars in excise taxes, penalties, fines, legal fees, and other damages, and constitutes clear abuse of control, breach of fiduciary duty, and a waste of corporate assets for which Defendants should be held liable.

## CLASS ACTION ALLEGATIONS

91.     Plaintiff brings this action individually and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all public holders of Imperial Holdings common stock (the "Class").  Excluded from the Class are Defendants and any person, firm, trust, corporation, or other entity related to, or affiliated with, any Defendant.

92.     The Class is so numerous that joinder of all members is impracticable.  According to the Company's SEC filings, there were over 21 million shares of the Company's common stock outstanding as of December 31, 2014.  These shares are held by hundreds, if not thousands, of beneficial holders who are geographically dispersed around the country.

- 23 -

Case No. _____

93.     There are questions of law and fact which are common to the Class, which predominate over any individual issues.  The common questions include, *inter alia*, the following:

        (a)      whether the Bylaw is valid and enforceable;

        (b)      whether the Bylaw is inconsistent with law and public policy;

        (c)      whether Defendants have breached their fiduciary duties of good faith, loyalty, and due care owed to Plaintiff and the other members of the Class;

        (d)      whether Plaintiff and the Class are entitled to declaratory relief;

        (e)      whether Plaintiff and the Class are entitled to injunctive relief; and

        (f)      whether the Proxy is materially false and misleading and violates the 1934 Act and the rules promulgated thereunder.

94.     Plaintiff's claims are typical of the claims of the other members of the Class, and Plaintiff does not have any interests adverse to the Class.

95.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

96.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

97.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein thereby making appropriate the declaratory and injunctive relief sought herein with respect to the Class as a whole.

- 24 -

Case No. _____

98.    Plaintiff anticipates that there will be no difficulty in the management of this litigation.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

99.    Plaintiff also brings this claim derivatively in the right and for the benefit of Imperial Holdings to redress injuries suffered and to be suffered by Imperial Holdings as a direct result of the breaches of fiduciary duty, abuse of control, and waste of corporate assets by Defendants.  Imperial Holdings is named as a nominal party solely in a derivative capacity.

100.    Plaintiff will adequately and fairly represent the interests of Imperial Holdings in enforcing and prosecuting its rights.

101.    Plaintiff is an owner of Imperial Holdings stock and was an owner of Imperial Holdings stock during all times relevant to the Defendants' wrongful course of conduct as alleged herein and, thus, has standing to bring this action.

102.    Plaintiff will fairly and adequately represent the interests of the Company in enforcing the rights of the Company, as detailed herein.

103.    This action is not being used by Plaintiff to gain any personal advantage, nor does Plaintiff maintain any personal agenda other than seeking to correct the wrongs that have been done to the Company.  To this end, Plaintiff has taken steps to file this action and has retained counsel experienced in derivative litigation and corporate governance actions.

104.    Defendants cannot exercise independent objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action for the reasons detailed throughout this complaint.  Consequently, Plaintiff's demand upon the Company to take the action requested

Case No. _____

herein is excused as futile.  Imperial Holdings' Board and its management are also antagonistic to

this lawsuit as follows, and thus, Plaintiff has not made a pre-filing demand on the Imperial Holdings

Board to initiate this action:

        (a)     The members of the Board approved the Bylaw challenged in this litigation,

and continue to push for its approval by the shareholders;

        (b)     The members of the Board have demonstrated their unwillingness and/or

inability to act in compliance with their fiduciary obligations and/or to sue themselves and/or their

fellow directors and allies in the top ranks of the Company for the violations of law complained of

herein.  These are people they have developed professional relationships with, who are their friends,

and with whom they have entangling alliances, interests, and dependencies.  Therefore, the Board

members are not able to, and will not, vigorously prosecute any such action.  Among other things,

Goldstein, Dakos and Hellerman are all connected with Bulldog Investors.

        (c)     The members of the Board approved and facilitated the fraudulent scheme to

falsify court documents in connection with petitioning courts for approval of the Company's

structured settlement factoring transactions, as alleged herein;

        (d)     The members of the Board have benefited, and will continue to benefit, from

the nefarious structured settlement scheme alleged herein and are incapable of exercising

independent objective judgment in deciding whether to bring this action;

        (e)     The members of the Board are likely targets of the IRS and SEC

investigations and are not capable of independently reviewing allegations pertaining to those very

investigations;

- 26 -

Case No. _____

(f)      In order to properly prosecute this lawsuit, it would be necessary for the directors to sue themselves – something they are unwilling to do.  Such a suit would require the directors to expose themselves to millions of dollars in liability to the Company and its shareholders. Indeed, Defendants are attempting to block entirely the ability of shareholders to sue them vis-à-vis the Bylaw, and thus have demonstrated their antagonism to shareholder litigation in general.

105.    Plaintiff has not made a demand on the shareholders of Imperial Holdings to institute this action because such demand would be a futile and useless act for the following reasons:

(a)      Imperial Holdings is a publicly traded company with over 21 million shares outstanding, and thousands of shareholders;

(b)      Making demand on such a large number of shareholders would be impossible for Plaintiff who has no way of obtaining the names, addresses, or phone numbers of the shareholders; and

(c)      Making a demand on all shareholders would force Plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

## CAUSES OF ACTION

## COUNT I

### Violations of §14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder

106.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 98 above, as if fully set forth herein.

107.    Defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

- 27 -

Case No. _____

108.    The Proxy was prepared, reviewed and/or disseminated by Defendants.    It misrepresented and/or omitted material facts, including the material information described in ¶¶58-73, above.

109.    In so doing, Defendants made untrue statements of material facts and omitted to state material facts necessary to make the statements that were made not misleading in violation of §14(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder.  By virtue of their positions within the Company, Defendants were aware of this information and of their duty to disclose this information in the Proxy.

110.    Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

111.    The omissions and false and misleading statements in the Proxy are material in that a reasonable shareholder would consider them important in deciding how to vote on the Bylaw.  In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy and in other information reasonably available to shareholders.

112.    By reason of the foregoing, Defendants have violated §14(a) of the 1934 Act and SEC Rule 14a-9(a) promulgated thereunder.

113.    Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive or other equitable relief is appropriate to ensure defendants' misconduct is corrected.

- 28 -

Case No. _____

## COUNT II

### Violation of §20(a) of the 1934 Act

114.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 98 above, as if fully set forth herein.

115.    Defendants acted as controlling persons of Imperial Holdings within the meaning of §20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Imperial Holdings  and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading.

116.    Each of the Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

117.    In particular, each of the Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Bylaw.  They were thus directly involved in the making of this document.

- 29 -

Case No. _____

118.    In addition, as the Proxy sets forth at length, and as described herein, Defendants were each involved in approving the Bylaw.  The Proxy purports to describe the various issues and information that they reviewed and considered, descriptions which had input from all Defendants.

119.    By virtue of the foregoing, Defendants have violated §20(a) of the 1934 Act.

120.    As set forth above, Defendants had the ability to exercise control over and did control a person or persons who have each violated §14(a) and SEC Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to §20(a) of the 1934 Act.

121.    Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive or other equitable relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT III

### Declaratory Judgment Pursuant to 28 U.S.C. §2201

122.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 98 above, as if fully set forth herein.

123.    Plaintiff brings this claim for a declaratory judgment pursuant to 28 U.S.C. §2201 to determine the validity of the Bylaw and the rights of Plaintiff and the Class.

124.    Plaintiff alleges that the Bylaw is invalid because it is an ultra vires attempt to regulate an extraneous matter that does not relate to the business or affairs of the Company, is inconsistent with Florida and federal law, and was adopted in breach of Defendants' fiduciary duties and in violation of Florida Statutes Section 607.0206.

Case No. _____

125.     Pursuant to Florida Statutes Section 86.021, Plaintiff respectfully requests that the Court enter a Declaratory Judgment in Plaintiff's favor, declaring that Defendants' Bylaw is invalid and unenforceable and adopted in breach of Defendants' fiduciary duties, and also grant Plaintiff the costs of this action and such other relief as this Court deems just and proper.

## COUNT IV

### Breach of Fiduciary Duties

126.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 98 above, as if fully set forth herein.

127.     Defendants, in bad faith, have knowingly, wilfully, and recklessly violated fiduciary duties of good faith, loyalty, and due care owed to Plaintiff and the public shareholders of Imperial Holdings and have put their own interests ahead of the interests of both the Company and those public shareholders.

128.     By the acts and courses of conduct alleged herein, Defendants, individually and acting as part of a common plan, knowingly, wilfully, or recklessly, and in bad faith, are attempting to unfairly deprive Plaintiff and the other members of the Class of their right to effectively deter, stop, and seek redress for legal harms caused by Defendants and officers of the Company.

129.     As alleged herein, the Individual Defendants knowingly, wilfully, and recklessly breached their duties of good faith, loyalty, and due care owed to the shareholders of Imperial Holdings because, among other reasons, they failed to act in the best interests of the public shareholders of Imperial Holdings common stock, as well as the Company itself, and placed their own interests over the interests of the Company's shareholders and failed to fully inform themselves of the circumstances and legality surrounding the Bylaw.

- 31 -

Case No. _____

130.    As a result of the Individual Defendants' unlawful actions, Plaintiff and the other members of the Class will be irreparably harmed in that they will be unable to effectively deter, stop, and seek redress for legal harms caused by directors and officers of the Company.

131.    Plaintiff and the other members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the irreparable injury that Defendants' actions are causing.

132.    Unless this Court enjoins Defendants from enforcing the Bylaw, the Individual Defendants will continue to knowingly, wilfully, or recklessly, and in bad faith, breach their fiduciary duties owed to Plaintiff and the Class, and keep them from effectively deterring, stopping, and seeking redress for legal harms caused by Imperial Holdings' directors and officers.

**COUNT V**

**Claim for Injunctive Relief Pursuant to Florida Statutes §607.0304**

133.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 98 above.

134.    Florida Statutes Section 607.0304(2)(a) grants shareholders the right to bring an action against their corporation to enjoin an ultra vires act.

135.    As alleged herein, Imperial Holdings has adopted a Bylaw that falls outside the scope of authority granted by Florida Statutes Section 607.0206, as it does not relate to the business or affairs of the Company, is inconsistent with Florida and federal law, and was adopted in breach of the Board's fiduciary duties.

- 32 -

Case No. _____

136.    Therefore, Imperial Holdings lacked power to adopt the invalid and unlawful Bylaw, and its adoption of the Bylaw was an ultra vires act enjoinable under Florida Statutes Section 607.0304(2)(a).

137.    Pursuant to Florida Statutes Section 607.0304(2)(a), Plaintiff and the other members of the Class respectfully request that this Court enjoin Imperial Holdings from enforcing the Bylaw that was adopted through an ultra vires act of the Company.

## COUNT VI

### Claim for Preliminary and Permanent Injunctive Relief

138.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 98 above, as if fully set forth herein.

139.    As alleged herein, the Individual Defendants knowingly, wilfully, and recklessly breached their duties of good faith, loyalty, and due care owed to the shareholders of Imperial Holdings because, among other reasons, they failed to act in the best interests of the shareholders and placed their own interests over the interests of the Company's shareholders and failed to fully inform themselves of the circumstances and legality surrounding the Bylaw.

140.    Plaintiff and the Class have a substantial likelihood of success on the merits of their claims as the Bylaw was adopted in breach of the Individual Defendants' fiduciary duties and is clearly inconsistent with Florida and federal law.

141.    Plaintiff and the other members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the irreparable injury that Individual Defendants' actions are causing.

- 33 -

Case No. _____

142.     Unless this Court enjoins Defendants from enforcing the Bylaw, the Individual Defendants will continue to knowingly, wilfully, or recklessly, and in bad faith, breach their fiduciary duties owed to Plaintiff and the Class, and keep them from effectively deterring, stopping, and seeking redress for legal harms caused by Defendants and other members of Company management.

143.     Plaintiff respectfully requests a preliminary and permanent injunction barring Defendants from enforcing the Bylaw against Plaintiff and the other members of the Class.

144.     Plaintiff also seeks a preliminary and permanent injunction barring Defendants from enforcing the Bylaw and from holding a shareholder vote on the Bylaw without full disclosure of all material information, as alleged in ¶¶58-73, above.

## COUNT VII

### Breach of Fiduciary Duty
### (Derivatively on Behalf of the Company)

145.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 90 and 99 through 105 above, as if fully set forth herein.

146.     As alleged in detail herein, Defendants, by reason of their positions as officers and directors of Imperial Holdings, owed Imperial Holdings fiduciary obligations of loyalty, good faith, independence, and candor in the management and administration of the affairs of the Company and were and are required to use their utmost ability to manage Imperial Holdings in a fair, just, honest, and equitable manner.

147.     Defendants violated their fiduciary duties of loyalty, good faith, independence and candor by failing in their enumerated duties which has caused the Company substantial harm,

- 34 -

Case No. _____

financial and reputational, and will likely result in substantial fines, penalties, legal fees, and other damages to the Company.

148.    But for the abdication of Defendants' fiduciary duties, the Company would not have been damaged.  Accordingly, all of the Defendants breached their fiduciary duties.

149.    As a direct and proximate result of Defendants' foregoing breaches of fiduciary duties, the Company has suffered significant damages, as alleged herein.

## COUNT VIII

### Abuse of Control
### (Derivatively on Behalf of the Company)

150.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 90 and 99 through 105 above, as if fully set forth herein.

151.    Defendants' misconduct alleged herein constitutes a breach of their fiduciary duties because they abused their ability to control and influence Imperial Holdings, for which they are legally responsible.

152.    As a direct and proximate result of these defendants' abuse of control, Imperial Holdings has sustained significant damages.

153.    As a result of the misconduct alleged herein, Defendants are liable to the Company.

## COUNT IX

### Against All Defendants for Gross Mismanagement
### (Derivatively on Behalf of the Company)

154.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 90 and 99 through 105 above, as if fully set forth herein.

Case No. _____

155.     By their actions alleged herein, Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Imperial Holdings consistent with the operations of a publicly held corporation.

156.     As a direct and proximate result of Defendants' gross mismanagement and breaches of duty alleged herein, Imperial Holdings has sustained significant damages.

157.     As a result of the misconduct and breaches of duty alleged herein, Defendants are liable to the Company.

**COUNT X**

**Against All Defendants for Waste of Corporate Assets**
**(Derivatively on Behalf of the Company)**

158.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 90 and 99 through 105 above, as if fully set forth herein.

159.     As a result of the improper conduct described herein, and by failing to properly consider the interests of the Company and its public shareholders and by refusing to conduct proper supervision, Defendants have caused and will continue to cause Imperial Holdings to waste valuable corporate assets and incur substantial expenses to defend Defendants' unlawful actions.

160.     As a result of the waste of corporate assets, Defendants are liable to the Company.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants as follows:

A.     Declaring that this action is properly maintainable as a class action;

- 36 -

1022522_1

Case No. _____

B.      Appointing Plaintiff as Class representative and Plaintiff's counsel as Class Counsel;

C.      Declaring that the Bylaw is invalid and unenforceable;

D.      Declaring that the Board breached its fiduciary duties;

E.      Preliminarily and permanently enjoining Defendants from enforcing the Bylaw;

F.      Preliminarily and permanently enjoining Defendants from holding a shareholder vote to ratify it without full disclosure of all material information as detailed in this complaint;

G.      Awarding damages to Plaintiff and the Class in an amount to be determined at trial.

H.      Awarding damages to the Company in an amount to be determined at trial.

I.      Awarding Plaintiff the costs of this action, including reasonable attorneys' and experts' fees; and

J.      Granting any and all other further relief as this Court may deem just and proper.

- 37 -

Case No. _____

DATED:  April 20, 2015

ROBBINS GELLER RUDMAN
   & DOWD LLP
PAUL J. GELLER
Florida Bar No. 984795
STUART A. DAVIDSON
Florida Bar No. 084824
ROBERT J. ROBBINS
Florida Bar No. 572233
CHRISTOPHER C. MARTINS
Florida Bar No. 088733

_____
*s/ Stuart A. Davidson*
STUART A. DAVIDSON

120 East Palmetto Park Rd., Suite 500
Boca Raton, FL  33432
Telephone: 561/750-3000
Fax: 561/750-3364
pgeller@rgrdlaw.com
sdavidson@rgrdlaw.com
rrobbins@rgrdlaw.com
cmartins@rgrdlaw.com

WEISSLAW LLP
JOSEPH H. WEISS
JOSHUA M. RUBIN
DAVID C. KATZ
1500 Broadway, 16th Floor
New York, NY  10036
Telephone: 212/682-3025
212/682-3010 (fax)
jweiss@weisslawllp.com
jrubin@weisslawllp.com
dkatz@weisslawllp.com

Attorneys for Plaintiff and the Class

1022522_1

**VERIFICATION**

I, Harry Rothenberg, declare that I have reviewed the foregoing Verified Shareholder Class Action and Derivative Complaint ("Complaint") and authorize its filing.  I have reviewed the allegations made in the Complaint, and to those allegations of which I have personal knowledge, I believe those allegations to be true.  As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation and for that reason believe them to be true.  I further declare that I am a current holder, and have been a holder of Imperial Holdings, Inc. common stock during the relevant time period in which the wrongful conduct alleged and complained of in the Complaint was occurring.

Executed this 15th day of April, 2015.

_____
Harry Rothenberg